1

2

3

4

5

6

7

8                       **IN THE UNITED STATES DISTRICT COURT**

9                       **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    DAVID REYES,                              No. 2:12-CV-0652-KJM-DMC-P

12                    Plaintiff,

13          v.                                   <u>FINDINGS AND RECOMMENDATIONS</u>

14    CHRISTOPHER SMITH, et al.,

15                    Defendants.

16

17              Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment (Doc.

19    38).  Defendants Smith and Heatley assert on summary judgment there exists no triable issue of

20    material fact as to plaintiff's Eighth Amendment claims based on alleged medical indifference by

21    defendants.  For the reasons discussed below, the court agrees.

22

23                              **I.  PLAINTIFF'S ALLEGATIONS**

24              This action proceeds on plaintiff's original unverified complaint (Doc. 1).  Plaintiff

25    names the following as defendants, who are medical professionals at Mule Creek State Prison:

26    (1) Christopher Smith, Chief Physician and Surgeon; (2) Scott Heatley, Chief Medical Officer;

27    (3) O. Akintola, Physician's Assistant; (4) Lawrence Fong, Chief Executive Officer, Health Care

28    Services; and (5) L.D. Zamora, Chief, California Correctional Health Care Services Office, Third

1    Level Appeals.

2              Plaintiff alleges defendants have violated his Eight Amendment rights by denying

3    him adequate medical care.  Specifically, he claims his doctor, Dr. Hashimoto, prescribed certain

4    pain medications, including morphine and gabapentin. According to plaintiff, defendants Smith

5    and Heatley, as members of the pain management committee, approved of these medications.

6    However, a few months later, defendants Smith and Heatley ordered all expensive pain

7    medications and nonformulary medications be discontinued, including the pain medications

8    prescribed plaintiff.  All of plaintiff's pain medications were discontinued by June 2011, due to

9    the decision by defendants Smith and Heatley.[1]

10             [1]       Plaintiffs' complaint also claims defendants Akintola, Fong, and Zamora are liable
     because they denied his inmate appeals regarding discontinuation of pain medications.  On June
11   28, 2012, the court found service inappropriate for defendants Akintola, Fong, and Zamora.  See
     Doc. 8 (June 28, 2012, order).  The court stated:
12
                      Prisoners have no stand-alone due process rights related to
13             the administrative grievance process.  See Mann v. Adams, 855 F.2d 639,
               640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th
14             Cir. 2003) (holding that there is no liberty interest entitling inmates to a
               specific grievance process).  Because there is no right to any particular
15             grievance process, it is impossible for due process to have been violated
               by ignoring or failing to properly process grievances.  Numerous district
16             courts in this circuit have reached the same conclusion.  See Smith v.
               Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to
17             properly process grievances did not violate any constitutional right); Cage
               v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison
18             officials' failure to properly process and address grievances does not
               support constitutional claim); James v. U.S. Marshal's Service, 1995 WL
19             29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend
               because failure to process a grievance did not implicate a protected liberty
20             interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994)
               (concluding that prisoner's claim that grievance process failed to function
21             properly failed to state a claim under § 1983).  Prisoners do, however,
               retain a First Amendment right to petition the government through the
22             prison grievance process.  See Bradley v. Hall, 64 F.3d 1276, 1279 (9th
               Cir. 1995).  Therefore, interference with the grievance process may, in
23             certain circumstances, implicate the First Amendment.
                      There are no allegations that plaintiff was unable to petition
24             his grievance.  Rather, he only claims defendants Akintola, Fong and
               Zamora denied his grievances.  This is insufficient to state claim, and
25             defendants Akintola, Fong and Zamora will be dismissed from
               this action.
26
               Doc. 8, p. 5 (June 28, 2012, order).
27
     The court recommends the District Judge adopt these findings as to defendants Akintola, Fong
28   and Zamora, who should be dismissed from the action.

# II.  THE PARTIES' EVIDENCE

## A.     **Defendants' Evidence**

Defendants contend the following facts are not in dispute:

1.      Plaintiff's health records for the time he was housed at Mule Creek State Prison show plaintiff received frequent medical care from both prison health care providers as well as outside providers for his complaints of low back pain.

2.      At his deposition, plaintiff admitted he has undergone "several" MRIs and x-rays of his back.

3.      At his deposition, plaintiff admitted he has been prescribed medication for pain, including Tylenol, Nortiptyline, Advil, Cymbalta, Naproxen, Elavil, and methadone.

4.      At his deposition, plaintiff admitted that he was prescribed, but refused, Tylenol with codeine.

5.      At his deposition, plaintiff admitted that he is currently prescribed methadone and Tylenol for pain management, and that methadone helps relieve his back pain.

6.      At his deposition, plaintiff admitted he has been provided treatment with multiple orthopedic specialists.

7.      As supervisory medical personnel and members of the pain management committee, Smith and Heatley were responsible for providing advice to plaintiff's primary care provider, Dr. Hashimoto, regarding appropriate treatment for plaintiff's chronic pain.

8. There are no entries in Plaintiff's medical record that document examination or orders prescribing medication for Plaintiff by either defendant Smith or Heatley.

9.      Dr. Hashimoto presented plaintiff's case to the pain management committee, which noted the following from plaintiff's medical record:  (a) MRI and x-ray evaluations revealed no remarkable back disease; (b) plaintiff has good functional abilities and unremarkable physical examinations, except plaintiff has noted to be histrionic and exaggerated in response to palpation of his back; (c) no physical symptoms were noted during a June 20, 2010, examination; (d) narcotic pain medications were not warranted long-term given the objective findings and plaintiff's history of drug-seeking behavior and illicit drug use; and (e) gabapentin, which is used to treat nerve pain, is not warranted because there is no evidence plaintiff's back pain is nerve-related.

10.      Dr. Hashimoto agreed with the pain management committee's recommendation to taper plaintiff off morphine and gabapentin due to lack of clinical need for those medication and to instead provide plaintiff with other pain medications.

/ / /

3

11.     Neither Smith nor Heatley discontinued morphine or gabapentin due to cost factors, as plaintiff alleges.

12.     Defendants' medical expert, Dr. Barnett, has reviewed the entire medical record and agrees with the decision to switch plaintiff's pain medication.

13.     At his deposition, plaintiff admitted to having used illegal drugs in the past and hoarding Seroquel instead of taking it as prescribed.

14.     Smith and Heatley made their recommendations based on plaintiff's objective clinical findings and not based on a subjective desire to cause plaintiff pain.

See Doc. 38-12 (Defendants' Separate Statement of Undisputed Material Facts).

The foregoing is supported by the declarations of defendants Smith and Heatley, the declaration of defendants' medical expert, Dr. Barnett, plaintiff's medical records, and plaintiff's deposition.

1.     Smith Declaration (November 7, 2016)

Defendant Smith's declaration includes evidence that he was a licensed medical doctor employed at Mule Creek State Prison, see Doc. 38-1, ¶ 1, and his responsibilities as Chief Physician and Surgeon included service on the pain management committee, see id. at ¶ 2, where he and the other committee members "meet(s) with primary care physicians to discuss and assess inmate -patient care," id. at ¶ 6.

Defendant Smith's declaration also evidences he had reviewed the relevant medical records from plaintiff's entire health history since incarceration, see id. at ¶ 7, and that health record showed that while at Mule Creek State Prison "Reyes received frequent medical care from Mule Creek providers and outside specialists regarding his complaint of lower back pain," id. at ¶ 8.

Defendant Smith was "part of the pain management committee that met on April 15, 2011, to consider Reyes's pain management and treatment." Id. at ¶ 9. According to defendant Smith:

Dr. Hashimoto, Reyes's primary care physician, presented Reyes's case to the pain management committee. The committee noted that Reyes had [sic] long history of chronic low back pain complaints and a history of poly-substance abuse and drug divergence, specifically Seroquel. The committee also noted Reyes's MRI and X-ray evaluations which showed

4

no remarkable back disease.

Id. at ¶ 10.

Defendant Smith further declared:

> . . .[S]everal examinations documented Reyes's functionality including his ability to ambulate with ease and to get in and out of chairs. Information presented to pain management committee included Reyes's good functional abilities allowing him to walk 4 to 6 laps around the track when not on lock down and a unremarkable physical exam even though the patient was histrionic with exaggerated response on palpation of back exam even though he could do everything asked of him. Of particular note was Reyes's June 20, 2010 examination by Physician's Assistant Carter. Physician's Assistant Carter conducted a complete examination and evaluation of Reyes and noted no physical symptoms consistent with Reyes's claims of pain. This was particularly notable given Reyes's ability to walk in and out of clinic with ease, no evidence of pain upon twisting, and good function in ambulation.

Id. at ¶ 13.

Defendant Smith offers unrefuted evidence that "narcotic/opioid pain medication, such as morphine, may no longer be medically necessary or advisable given the risks attendant to narcotic use," id. at ¶ 15, and "Reyes's gabapentine prescription also appeared unnecessary because Reyes had no evidence of nerve pain to support its continued use," id. at ¶ 16.

Defendant Smith further states:

> The pain management committee and Dr. Hashimoto concurred that continued treatment with morphine and gabapentine was not appropriate for Reyes. The committee determined that Reyes should be provided non-narcotic medications to address his pain, because the risks of further treatment with opiates/narcotics such as morphine and gabapentine outweighed the potential benefit. . . .

Id. at ¶ 17.

2.      Heatley Declaration (November 21, 2016)

In his declaration, defendant Heatley states:

> As Mule Creek's Chief Medical Executive, my job duties generally involved supervision of medical staff, procuring equipment, hiring staff, and other administrative tasks. I regularly participated in meetings, including pain-management committee meetings.

CAR 38-6, ¶ 4.

/ / /

5

Defendant Heatley also states plaintiff ". . .received appropriate medical care and treatment commensurate with the community health care standards at Mule Creek." Id. at ¶ 6. He further declared that he "never intentionally or deliberately disregarded any known risk to Reyes or intentionally caused him pain, suffering, injury, or harm." Id. at ¶ 7.

### 3. Barnett Declaration (November 8, 2016)

Defendants' expert Dr. Bruce P. Barnett states that, based on his review of the medical records, the deposition testimony, the pleadings, as well as his training and experience as a medical professional:

> Dr. Smith and Dr. Heatley did not provide direct patient care for Reyes. In their supervisory roles as Chief Physician and Chief Medical Executive respectively, Dr. Smith and Dr. Heatley's duty was to advise Reyes's primary care providers about standards of care and safe practices. In Reyes's case, they provided such advise by participating in the pain-management committee, which provides a forum for medical providers to discuss specific inmate-patient issues and collectively determine the appropriate course of treatment. There are no entries in the medical record that document examination or orders by Dr. Smith or Dr. Heatley concerning Reyes's medications.

> CAR 38-7, ¶ 18.

Dr. Barnett adds:

> Reyes's allegations against Dr. Smith and Dr. Heatley are unfounded. There are no medical records to support Reyes's allegation that Drs. Smith and Heatley issued directives to discontinue expensive medications and/or discontinue prescribing drugs not on the CCHCS formulary. At no times did Dr. Smith or Dr. Heatley display indifference to Reyes's Serious medical conditions.

> Id. at ¶ 19.

According to Dr. Barnett:

> . . .At no time did Dr. Smith or Dr. Heatley, or any other supervisory/executive physician at Mule Creek or anywhere in the CDCR/CCHCS, bar all non-formulary pain drugs or direct physicians to withhold drugs based on drug costs. Non-formulary drugs are regularly provided to inmates who cannot be adequately treated with drugs on the pharmaceutical formulary. The cost of medications is of interest to healthcare providers, but does not control prescribing. In fact, the drugs at issue (morphine and gabapentin) are both available in generic form, and therefore have a relatively low cost.

> Id. at ¶ 20.

6

4.      Plaintiff's Deposition (August 22, 2016)

Defendants cite plaintiff's deposition in support of their motion.  Of note is the following testimony:

Q:      Okay.  So you have received an MRI of your back; yes?

A:      Yes, several.

CAR 38-10, pg. 37, lines 18-20.

* * *

Q:      Have you not been prescribed acetaminophen Tylenol?

A:      Nothing but Tylenol and psych meds.

Q:      I'm sorry.  I didn't catch the last one.

A:      I've been provided with – after they took my off my morphine and gabapentin, I've been provided with Tylenol and psych meds.

Q:      Psych meds?

A:      Psych meds.

Id. at pg. 40, lines 16-24.

* * *

Q:      . . .You've been provided with nortriptyline, isn't that true:

A:      Nortriptyline, which is a psych med.

Q:      And you've been provided – you've also been prescribed ibuprofen, isn't that true?  Advil?

A:      On and off, but not really.

Q:      You've also been prescribed Cymbalta, isn't that true?

A:      Which is a psych med as well.

Q:      It's a psych med, correct. [¶] But you have been prescribed Cymbalta, isn't that true?

A:      Yes.

Id. at pg. 41, lines 3-15.

* * *

Q:      You have been prescribed Tylenol with Codeine, but you refused that, is that correct?

A:      I refused that because it gets me constipated.

CAR 38-10, pg. 42, lines 1-3.

* * *

Q:      You are currently taking methadone for pain, correct?

A:      5 milligrams, but it's not enough.

Q:      That's a yes?  You are –

A:      Yes.

Id. at lines 5-9.

* * *

Q:      You have also been prescribed Elavil, E-l-a-v-i-l, correct?

A:      Elavil, yes.

Id. at lines 10-12.

* * *

Q:      You've also been on Naproxen, is that right?

A:      Naproxen.

Q:      Yes?

A:      Yeah. . . .

Id. at pg. 43, lines 11-14.

* * *

Q:      And you are currently taking – you have been prescribed methadone in the past as well, correct?

A:      Yes --

As to the medications plaintiff had been prescribed as of the date of his deposition, plaintiff testified he was taking methadone and Tylenol for his back pain.  See id. at pg. 9, lines 4-21. Plaintiff also testified that he has been treated by an orthopedic surgeon.  See id. at pg. 48, lines 19-21.

/ / /

8

As to hoarding medication, plaintiff testified:

> Q:     . . . [¶] You have been accused of keeping – of having extra Seroquel in your cell in 2006, is that correct?
>
> A:     That's correct. . . . [¶] And the reason why it stayed in my cell, I didn't know it was such a big deal so I just would put them to the side.
>
> Q:     But you were accused of keeping –
>
> A:     Yeah.
>
> Q:     -- extra Seroquel instead of taking the medication, correct?
>
> A:     Yeah.

CAR 38-10, pgs. 52-53, lines 23-13.

**B.      Plaintiff's Evidence**

Plaintiff's complaint is unverified and plaintiff has filed no evidence in opposition to defendants' motion.

# III.  STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
>
> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

9

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could

properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." <u>Anderson</u>, 477 U.S. at 251.

# IV. DISCUSSION

In their motion for summary judgment, defendants Smith and Heatley argue they are entitled to judgment in their favor as a matter of law because the undisputed facts show plaintiff was provided adequate medical care and his claim amounts to nothing more than a difference of medical opinion upon which plaintiff cannot prevail under § 1983.  According to defendants:

> That Reyes disagrees with the assessment made by Dr. Heatley, Smith and their colleagues does not mean that such professional assessments were made with indifference to his medical condition or pain complaints. (UMF 55.) The determination made by Dr. Heatley and Dr. Smith was reasonable, and supported by applicable guidelines. (UMF 53-54.) Based on his independent review of this case, Dr. Barnett's concludes that Reyes has mistakenly accused Defendants of wrongdoing. (UMF 56.) But Defendants' respective actions comported with and exceeded applicable standards of care. (*Id.*) Undisputed evidence in Reyes's medical records and in medical science contradicts each and every one of Reyes's allegations against each Defendant. (*Id.*) None of the alleged actions by Defendants caused Reyes to suffer any harm. (*Id.*) Summary judgment should be granted in their favor.

Defendants also argue they are entitled to qualified immunity:

> Because Defendants' conduct did not violate Reyes's constitutional rights and because it would not have been clear to reasonable medical service providers that Defendants' actions, which included a review of Reyes's medical records and mutual discussion regarding his case, unconstitutionally violated Reyes's rights, Defendants are entitled to qualified immunity.

## A.    <u>Difference of Medical Opinion</u>

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.   <u>See</u> <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993); <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  <u>See</u> <u>Rhodes v.</u>

Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate

12

that the delay led to further injury.  See <u>McGuckin</u>, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See <u>Estelle</u>, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996).

In the instant case, plaintiff's allegations of "deliberate indifference" to his serious medical needs are unsupported by evidence. The undisputed evidence fails to give rise to any theory of recovery under § 1983.  Absent evidence to support any claim, plaintiff cannot prevail and defendants are entitled to judgment in their favor as a matter of law.

The undisputed evidence here documents that defendants Smith and Heatley were not deliberately indifferent to plaintiff's medical condition, but in fact were performing their respective supervisory duties, and appropriately advised Reyes's primary care providers consistent with the standard of care and safe practices.  Defendants' evidence, which plaintiff does not challenge, shows defendants were not plaintiff's primary care physicians and that his primary care physician – Dr. Hashimoto – provided plaintiff with medical care related to his complaints of back pain.  Neither defendant examined or treated plaintiff.

Nor does the undisputed evidence support plaintiff's contention defendants issued directives to discontinue plaintiff's pain medications based on indifference to Reyes' serious medical condition.  To the contrary, the undisputed evidence shows defendants, as part of the Pain Management Committee, concurred with Dr. Hashimoto that narcotic pain medications, such as morphine and gabapentin, were not warranted in plaintiff's case due to concerns plaintiff could develop a dependency issue.  Moreover, the undisputed evidence establishes that, while defendants and Dr. Hashimoto agreed narcotic pain medications were not indicated, plaintiff was still prescribed medications for his back pain.  To the extent plaintiff is now in disagreement with the treatment protocols undertaken while he was an inmate at Mule Creek State Prison, such a difference of medical opinion does not give rise to a claim under § 1983.  See <u>Sanchez v.Vild</u>, 891 F. 2d 240, 242 (9th Cir 1989); <u>see also</u> <u>Jackson</u>, 90 F.3d at 332.

The court finds defendants have met their initial burden on summary judgment of demonstrating the absence of triable issues of fact arising from any of plaintiff's allegations of mistreatment in violation of his Eighth Amendment rights. Where, as here, the defendants are able to show that medical personnel have been "consistently responsive to [the inmate's] medical needs," and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," a plaintiff's claim is properly resolved by summary judgment prior to trial. Toguchi v. Chung, 391 F.3d 1051, 1061 (9th Cir. 2004) (quoting Jackson v. McIntosh, 90 F. 3d 330, 332 (9th Cir 1996)). The Eighth Amendment does not provide a right to a specific treatment. See Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand specific care). Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. See Broughton v. Cutter Lab, 622 F.2d 458, 460 (9th Cir. 1980).

The burden shifts to plaintiff to present the court with evidence indicating a genuine dispute as to a material fact. The court finds plaintiff has failed to do so. Plaintiff has offered no evidence whatsoever to either dispute defendants' evidence, outlined above, or to support any recovery here. Rather, plaintiff objects to Dr. Barnett's declaration because Dr. Barnett never treated or examined plaintiff. The court rejects this argument because Dr. Barnett's declaration is admissible as expert testimony. Plaintiff also argues Dr. Hashimoto previously prescribed morphine and, for this reason, there is a dispute as to whether morphine was necessary. This argument, however, ignores evidence indicating Dr. Hashimo himself agreed morphine was no longer indicated and that non-narcotic pain medications were more appropriate. Finally, plaintiff appears to suggest defendants are lying in their declarations. Plaintiff, however, offers no evidence of his own to create a dispute as to the veracity of defendants' declarations.

In the absence of a genuine issue of material fact, summary judgment is properly granted in favor of defendants.

/ / /

/ / /

/ / /

14

## B.    Qualified Immunity

Defendants also argue they are entitled to qualified immunity.  Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether the right was clearly established.  See id.  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition. . . ."  Id.  "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Id. at 202 (citation omitted).  Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right.  See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right."  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct

15

did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first factors in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the reasonableness of the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). The district court has discretion to determine which of the Saucier factors to analyze first. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

In this case, the court agrees defendants are entitled to qualified immunity. Assuming the facts alleged by plaintiff when read in the light most favorable to plaintiff establish a constitutional violation, the undisputed evidence establishes no constitutional violation in fact occurred. Therefore, defendants reasonably and correctly believed their conduct did not violate the law. See Saucier, 533 U.S. at 205.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# V. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.      Defendants Akintola, Fong and Zamora be dismissed for failure to state a claim for the reasons stated in the court's previous order of June 28, 2012 (Doc 8); and

2.      Defendants' motion for summary judgment (Doc. 38) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


Dated:  January 16, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE